UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| SCOTT M. CARELS and | : | |
| JOANN M. CARELS | | |
| Debtors | : | Bankruptcy No. 07-17291bf |

_____

| | | |
|---|---|---|
| CHRISTINE SHUBERT, Chapter 7 | : | |
| Trustee for the Estate of Scott M. Carels | | |
| and Joann M. Carels | : | |
| Plaintiff | : | |
| v. | : | |
| SCOTT M. CARELS, JOANN M. | : | |
| CARELS, and WILLIAM C. MILLER, | | |
| ESQUIRE, former Chapter 13 Trustee | : | |
| for the Estate of  Scott M. Carels | | |
| and Joann M. Carels | : | |
| Defendants | : | Adversary No. 09-0134 |

_____

...................................................

MEMORANDUM

...................................................

The plaintiff, chapter 7 trustee Christine C. Shubert, Esq., commenced this

adversary proceeding seeking a declaration that property of the estate, transferred to her

possession by the former chapter 13 trustee, can be distributed to unsecured creditors

under 11 U.S.C. § 726.  William C. Miller, Esq., the former chapter 13 trustee, has agreed

that he holds no interest in these funds.  "Consent Order" (docketed July 21, 2009).

The chapter 7 debtors, Scott and Joann Carels, object to the relief sought by the plaintiff

and contend, via counterclaim, that the funds currently held by the chapter 7 trustee are

exempt under section 522(d)(1), except for $5,503.89.

The chapter 7 trustee has moved for summary judgment.

The following material facts are not in dispute, many of which were stipulated to in a prior contested matter between the chapter 7 trustee and the debtors. See Motion for Summary Judgment, "Schedule 1"; Debtors' Affidavit, ¶ 1. The undisputed material facts are also derived from the debtors' bankruptcy schedules, affidavit, and documents filed of record with this court, including proofs of claim.

I.

On December 12, 2007, the debtors filed a voluntary petition in bankruptcy under chapter 13. William C. Miller, Esq., who has been appointed a standing chapter 13 trustee in this district, was assigned as trustee in their case. See 11 U.S.C. § 1302(a).

At the time of their bankruptcy filing, the debtors owned the real property located at 2830 Tyler Road, Bensalem, Pennsylvania, which property they were trying to sell. Their ownership interest in that realty was fully disclosed on their bankruptcy schedules and valued by them at $234,900. See Bankruptcy Schedule A. Moreover, the debtors claimed a federal homestead exemption under 11 U.S.C. § 522(d)(1) in the amount of $40,400. See Bankruptcy Schedule C.

On March 5, 2008, the chapter 13 trustee held and completed a section 341 meeting. At no time thereafter did the chapter 13 trustee object to the debtors' homestead exemption claim.

When the debtors filed their chapter 13 petition, both were unemployed. Their bankruptcy schedule of income revealed no monthly income. See Bankruptcy

2

Schedule I.  Their schedule of expenses disclosed no disposable income with which to fund a chapter 13 plan of reorganization.  See Bankruptcy Schedule J.  The debtors' purpose in their chapter 13 filing was to sell their home and avoid foreclosure.  They hoped to sell the realty, repay creditors, and receive as much of their home equity (in the form of proceeds) as possible, while also obtaining a bankruptcy discharge.

Although the debtors were eligible to seek chapter 7 relief, they opted instead to file a chapter 13 petition because of their fear that a chapter 7 trustee would conclude that there was insufficient non-exempt equity in the realty to warrant marketing and selling their real property.  As only the chapter 7 trustee has authority to sell estate property, see 11 U.S.C. §§ 363(b), 704(1), the debtors anticipated that a chapter 7 trustee would not exercise that authority.  Therefore, the debtors were concerned that a chapter 7 filing would result in their mortgagee obtaining relief from the bankruptcy stay and proceeding to foreclosure.  Upon a sale in foreclosure, the debtors thought it likely that all equity in their home would be lost.  Thus, they filed a chapter 13 petition in order to invoke the bankruptcy stay, retain possession of estate property, see 11 U.S.C. § 1306(b), and have the right to sell their realty.

On April 11, 2008, about four months after their bankruptcy filing, the debtors found a buyer and signed an agreement of sale for the Bensalem realty in the amount of $216,000.  See Debtors' Motion to Sell, Ex. A.  On May 29, 2008 the debtors filed a motion seeking authority to sell under 11 U.S.C. §§ 363, 1303.

A hearing was held on that sale motion.  After discussions between counsel for the chapter 13 trustee and counsel for the debtors, on June 24, 2008 an agreed order

was entered authorizing the debtors to sell their realty.  This sale order contained certain

provisions proposed by the chapter 13 trustee and by the debtors.

The June 24th order provided that the debtors' real property could be sold

for $216,000, authorized distribution at closing to repay the outstanding mortgage balance

in full, authorized the payment of a real estate commission, and also authorized the

payment of the debtors' two outstanding car loan balances totaling $11,749.86.  See

Motion for Summary Judgment, Ex. C.  The sale order also directed the title clerk to pay

the remaining proceeds to the chapter 13 trustee "as a special receipt, to be available

under the debtor's [sic] plan for distribution to unsecured creditors."  Id., at 2.  This order

also stated:

> Debtor [sic] shall not be permitted to voluntarily dismiss the
> case; he [sic] may, however, convert this case to one under
> Chapter 7.  In the event the case is converted to Chapter 7,
> any funds remaining in the possession of the standing trustee
> shall be transferred to the appointed Chapter 7 trustee. . . .

Id., at 2.

The Bensalem realty was then sold on July 25, 2008, with the debtors'

mortgage and secured car loans paid in full from the proceeds.  After payment of various

closing costs and commissions, $34,154.03 was transferred to the chapter 13 trustee in

accordance with the sale order.  See Motion for Summary Judgment, ex. G.[1]

On September 25, 2009, the debtors' proposed third amended chapter 13

plan was confirmed.  Motion for Summary Judgment, ex. E.  Under the terms of their

confirmed plan, there were seven classes of claims.  Classes I-III consisted solely of the

---

[1]A total of $11,749.86 was paid to the two motor vehicle lenders from the realty
sale proceeds.  With $34,154.03 paid to the chapter 13 trustee, that means $45,903.89 remained
from those proceeds after payment of closing costs, commissions, and the mortgage lien.

three secured creditors (viz., mortgagee and two auto lenders) whose claims had been

repaid in full from the realty sale proceeds prior to confirmation.  Motion for Summary

Judgment, ex. D.  Class IV consisted of the secured claim of Blue Stone Investments in

the amount of $4,492.03.  Class V consisted of the claims of secured creditors not

included in classes I-IV, if any.  Class VI consisted of the priority claim of the Internal

Revenue Service in the amount of $2,555.17.  Finally, class VII consisted of the claims of

general unsecured creditors.  Id., at 2.

> After classifying the various claims, the confirmed plan provided that the
>
> Funds paid to the trustee shall be held for 30 [sic][2] following
> confirmation of the debtors' plan or until all filed objections
> to claims are resolved, *whichever is earlier*.  The Trustee
> should then distribute funds, less the trustee's commission, as
> follows:
>
>> (a). To the allowed secured claim, if any, of the
>> Class VI claimant until paid in full;
>>
>> (b). To the allowed claim, if any, of the Class
>> IV claimant until paid in full;
>>
>> (c). To the allowed claim, if any, of the Class V
>> claimant until paid in full;
>>
>> (d). To the allowed claims, if any, of the Class
>> VII claimants until paid in full; and
>>
>> (f). To the debtors following payment in full to
>> all creditors.

Motion for Summary Judgment, ex. D, at 3 ¶ 6 (emphasis added).

---

[2] Apparently, the debtors inadvertently omitted the word "days" after the number 30.

At the time of confirmation, there were no objections to claims pending. There were also no secured proofs of claim filed by creditors, other than those placed in classes I-IV. The IRS and Bluestone proofs of claim filed with this court were consistent with the provisions of the confirmed plan and totaled $7,247.20. In addition, there were $15,553.61 in general unsecured claims filed of record. See Claims Register. Therefore, the creditor claims provided for by the confirmed plan not paid pre-confirmation from the realty sale proceeds equaled $22,800.81. The trustee had sufficient funds on hand to pay all claims in full at the time of confirmation, plus yield a surplus to the debtors.

The debtors' confirmed plan also provided as follows:

> To facilitate the payment of creditors under this plan in a lump sum, as opposed to installment payments over an extended period, the debtors are waiving their exemptions for purposes of this plan. This waiver will not apply in the event the case is ever converted to Chapter 7.

Plaintiff's Motion, ex. D, ¶ 10.

The September 25th confirmation order stated, inter alia:

> That all property of the estate, including any income, earnings other property which may become a part of the estate during the administration of the case which property is not proposed, or reasonably contemplated, to be distributable to claimants under the plan shall revest in the debtor(s); provided, however, that no property received by the trustee for the purpose of distribution under the plan shall revest in the debtor except to the extent that such property may be in excess of the amount needed to pay in full all allowed claims as provided in the plan.

On October 1, 2008, just five days after confirmation, the debtors filed an application for conversion under 11 U.S.C. § 1307(a), thereby converting their case from chapter 13 to chapter 7. Upon conversion, the chapter 13 trustee retained about $3,100 as a commission under 11 U.S.C. § 1326(b)(2) and transferred the balance, roughly $31,000,

6

to the chapter 7 trustee Ms. Shubert, appointed under section 701(a).  The chapter 7

trustee currently has possession of those transferred funds and seeks to distribute them to

general unsecured and priority creditors.

On November 17, 2008, counsel for the debtors communicated with the

chapter 7 trustee and asserted that all but $5,001.91 of the funds held by her were exempt

under section 522(d)(1).[3]  Motion for Summary Judgment, ex. H.  The trustee responded

by filing an objection to the debtor's exemption claim, which was overruled on March 19,

2009 without prejudice to the trustee's right to file the instant adversary proceeding.


II.


A.


In her complaint, the chapter 7 trustee seeks a declaration that the debtors

waived any exemption rights they may have had to the $31,000 in her possession, and that

she may distribute those funds in accordance with 11 U.S.C. § 726.  The debtors assert

that they preserved their exemption rights by the terms of their confirmed plan when their

case was converted to chapter 7.  Via counterclaim, they seek turnover from the trustee of

"only so much of the sale proceeds as they would be entitled to retain had the Chapter 7

---

[3]The debtors's counsel calculated this figure by adding the sale proceeds paid to
the trustee to the amounts paid to the two secured car lenders and then subtracted the debtors'
$40,400 homestead exemption. Motion for Summary Judgment, ex. H.  In his computation,
counsel committed a mathematical error, as $34,154.03 + $8,266.42 + $3,483.44 = $45,903.89
and not $46,391.91.  Subtracting $40,400 from the correct amount yields $5,503.89 and not
$5,001.91.

trustee sold their property." Answer and Counterclaim, ¶ 40.  The parties' request for

declaratory relief is ripe based upon "(1) the adversity of the parties' interests, (2) the

conclusiveness of the judgment, and (3) the utility of the judgment." Pic-A-State Pa., Inc.

v. Reno, 76 F.3d 1294, 1298 (3d Cir. 1996); see, e.g., NE Hub Partners, L.P. v. CNG

Transmission Corp., 239 F.3d 333, 342 (3d Cir. 2001); see also In re Cahill, 2008 WL

5441229 (Bankr. N.D. Ohio 2008) (granting declaratory judgment as to the scope of

estate property).

       The trustee now seeks summary judgment.  Federal Rule of Bankruptcy

Procedure 7056 incorporates Fed. R. Civ. P. 56, the summary judgment rule, into

bankruptcy adversary proceedings.  The purpose of summary judgment is to avoid the

expense and delay of an unnecessary trial when no material facts are in dispute and one or

more of the parties is entitled to prevail on the merits.  See, e.g., Goodman v. Mead

Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976), cert. denied, 429 U.S. 1038 (1977).

The standard for determining the applicability of summary judgment under Rule 56 is

well established.  As the Third Circuit Court of Appeals observed:

> Summary judgment is appropriate when the moving party is
> entitled to judgment as a matter of law and there is no genuine
> dispute of material fact. . . .  In order to defeat "a properly
> supported summary judgment motion, the party opposing it
> must present sufficient evidence for a reasonable jury to find
> in its favor." Groman v. Township of Manalapan, 47 F.3d
> 628, 633 (3d Cir. 1995) (citing Anderson v. Liberty Lobby,
> Inc., 477 U.S. 242, 250-52, 106 S. Ct. 2505, 2511-12, 91 L.
> Ed. 2d 202 (1986)).  In essence, the non-moving party must
> demonstrate a dispute over facts that might affect the outcome
> of the suit. Id.  Moreover, in reviewing the record, we must
> give the non-moving party the benefit of all reasonable
> inferences. . . .

Hampton v. Borough of Tinton Falls Police Dep't, 98 F.3d 107, 112 (3d Cir. 1996).

Here, the debtors agree with the trustee that there are no material facts in dispute.  Instead, they challenge the trustee's assertion that she is entitled to the declaratory judgment she seeks as a matter of law.

B.

As noted above, the debtors in this bankruptcy case claimed a homestead exemption in the amount of $40,400 under section 522(d)(1).  No timely objection was filed and so this exemption was allowed.  See Taylor v. Freeland & Kronz, 503 U.S. 638 (1992).  The plaintiff/trustee contends, however, that the debtors subsequently and expressly waived their exemption claim by: (1) agreeing to the June 2008 sale order that stated that the net sale proceeds would be paid to the chapter 13 trustee "as a special receipt, to be available under the debtor's plan for distribution to unsecured creditors"; (2) consenting to the transfer of approximately $34,000 to the chapter 13 trustee at the sale closing; (3) proposing a plan that provided for full payment for unsecured creditors; (4) stating in their plan that they are "waiving their exemptions for purpose of this plan"; and (5) obtaining confirmation of their proposed plan.  Compare In re Brown, 234 B.R. 907, 914 (Bankr. W.D. Mo. 1999) (exemption waiver in proposed chapter 11 plan was not effective because the plan was not confirmed).

Alternatively, the trustee contends that principles of equity and estoppel should preclude the debtors from now asserting their homestead exemption claim.  See generally Matter of Yonikus, 996 F.2d 866, 872 (7th Cir. 1993) (an amendment of an exemption claim "may be denied upon a showing of bad faith or prejudice to creditors or

9

third parties."); In re Doan, 672 F.2d 831, 833 (11th Cir. 1982) (same).  Having obtained

the benefits of a chapter 13 sale upon a promise to repay their creditors, the debtors

should not, the trustee asserts, be able to renege upon their promise.

       The debtors respond that they are entitled to their previously claimed

homestead exemption because their confirmed plan expressly provided that their waiver

of exemptions would not apply in the event their case was converted to chapter 7.  As

conversion did occur, and as their chapter 13 plan was approved, they contend that all

parties are bound by this waiver rescission under 11 U.S.C. § 1327(a).  See generally In re

Szostek, 886 F.2d 1405 (3d Cir.1989).  They further maintain such a result is equitable, as

creditors would then receive a distribution consistent with the sale of the realty under

chapter 7.  To deny them their exemption claim would, in the debtors view, result in a

windfall to creditors.  See Debtors' Memorandum, at 8-9.  The debtors also raise a third

contention—that any rights of creditors under section 1326(a)(2) were lost when the

chapter 13 trustee relinquished funds to the chapter 7 trustee—that will also be

considered.

       In resolving this summary judgment motion, I note certain aspects of this

proceeding that are different from the typical dispute between a chapter 7 trustee and a

debtor after conversion of a case from chapter 13 to chapter 7.

       In order to retain control of their property, hire a real estate agent, and

attempt to sell their realty, the debtors here filed a chapter 13 petition even though they

had no monthly income.  By virtue of section 109(e) of the Code, "only an individual with

regular income . . . may be a debtor under chapter 13[.]"  Thus, these debtors, who

disclosed that they had no regular income when their bankruptcy petition was filed, were

10

not eligible for chapter 13 relief; yet no party in interest raised this issue, which can be

waived.  See Rudd v. Laughlin, 866 F.2d 1040, 1042 (8th Cir. 1989) (eligibility for

chapter 13 relief is not jurisdictional and can be waived); Matter of Phillips, 844 F.2d

230, 235-36 n. 2 (5th Cir. 1988) (same).

In addition, the debtors here were proposing a chapter 13 plan that provided

for no monthly payments to the chapter 13 trustee.  The proceeds from the sale of their

realty was their sole source of plan funding.  Such a plan was objectionable:

> Chapter 13 debtors may not fund a plan entirely from the sale
> of property. . . .  Nor may debtors use the sale of property to
> avoid the eligibility requirements of § 109(e).  Therefore,
> debtors who have no disposable income with which to make
> payments under a Chapter 13 plan are not eligible for relief
> under Chapter 13 regardless of whether they can otherwise
> fund a plan through the sale of property.

In re Lindsey, 183 B.R. 624, 626-27 (Bankr. D. Id. 1995) (citations omitted); see also In

re Gavin, 24 B.R. 573 (B.A.P. 9th Cir. 1982):

> The purpose underlying the enactment of Chapter 13 was to
> enable a debtor with regular income to develop and maintain a
> plan for repayment of his debts, rather than opt for
> liquidation.  See, Report of the Committee on the Judiciary,
> H.R. 95-595, 95th Cong. 1st Sess. 1978, p. 118, U.S.Code
> Cong. & Admin.News 1978, p. 5787.  This legislative
> purpose is frustrated by a plan that proposes liquidation of a
> debtor's primary asset by a debtor whose regular income is
> not sufficient to make any payments from future income.  In
> enacting the Code, Congress stated that Chapter 13 is not for
> everyone:
>
>> Some consumer debtors are unable to avail
>> themselves of the relief provided under Chapter
>> 13.  For these debtors, straight bankruptcy is the
>> only remedy that will enable them to get out
>> from under the debilitating effects of too much
>> debt.
>
> H.R. 95-595. . . .

11

> The appropriate recourse for the debtors whose plan is
> nothing more than a liquidation is Chapter 7, not Chapter 13.

Id., 24 B.R. at 575 (citation omitted).[4]

Nonetheless, the debtors confirmed a plan, without opposition, that called for the liquidation of their primary asset and distribution of the sale proceeds to their creditors, without further plan payments to the chapter 13 trustee.

To the extent that the chapter 13 trustee and creditors believed that this chapter 13 case would yield a 100% dividend on all allowed claims from the sale of the debtors' real property, one can understand why the debtors' lack of eligibility and the problematic nature of their proposed chapter 13 plan went unchallenged. These two aspects, however, render application of section 348(f)[5] to this dispute non-determinative. And disputes between chapter 7 trustees and debtors regarding the scope of bankruptcy

---

[4]Section 1123(b) lists permissible chapter 11 plan provisions; section 1222(b) lists permissible chapter 12 plan provisions; and section 1322(b) lists permissible chapter 13 plan provisions. Sections 1123(b)(4) and 1222(b)(8) both state that reorganization plans under chapters 11 and 12 may provide for the sale of some or all property of the bankruptcy estate, with the proceeds distributed to creditors. Section 1322(b) contains no similar provision.

[5]Section 348(f) states in relevant part:

(f)(1) Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title--

   (A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion;

*       *       *

(2) If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion.

estate property, as well as the disposition of property held by a chapter 13 trustee and

transferred to a chapter 7 trustee upon conversion of the case, are usually decided by

reference to section 348(f).  See generally In re Alexander, 236 F.3d 431, 433 (8th Cir.

2001); In re Stamm, 222 F.3d 216 (5th Cir. 2000).

In general, sections 348(f)(1)(A) and (f)(2) address, inter alia, the

disposition of postpetition income paid to the chapter 13 trustee that has not been

distributed at the time of conversion of the case to chapter 7.  Unless the conversion was

in bad faith, those income payments are returned to the debtor upon conversion, as they

would not have been property of the bankruptcy estate under chapter 7.  See, e.g., In re

Stamm, 222 F.3d at 218; In re Young, 66 F.3d 376 (1st Cir. 1995); In re Perez, 345 B.R.

137, 140-41 (Bankr. D. Del. 2006).  If the conversion was in bad faith, such undistributed

income payments are transferred by the chapter 13 trustee to the chapter 7 trustee for

distribution to creditors.  See In re Siegfried, 219 B.R. 581 (Bankr. D. Colo. 1998); see

generally In re Messer, 2000 WL 33673748 (Bankr. M.D.N.C. 2000).

As the debtors observe in their memorandum, the chapter 13 trustee never

had any postpetition income in his possession.  He transferred to the chapter 7 trustee the

proceeds of real property that would have been property of the estate had the case been

commenced under chapter 7.  11 U.S.C. § 541(a)(6); see, e.g., In re Waters, 2008 WL

384571, at *8 (Bankr. D. Conn. 2008); In re Buick, 237 B.R. 607, 609 (Bankr. W.D. Pa.

1999).

Had the debtors argued in the instant dispute that the funds transferred by

the chapter 13 trustee were not property of the estate, because they were not "in the

possession of or . . . under the control of the debtor on the date of conversion," 11 U.S.C.

13

§ 348(f)(1)(A), the trustee likely would have countered that the conversion was in bad

faith and argued that section 348(f)(2) should apply.  The debtors, however, do not so

contend, and therefore I need not address that issue.  They maintain that the sale proceeds

transferred to the chapter 7 trustee are estate property "in that they are the proceeds of the

house the debtors owned on the date of the filing of their petition, and they remain in the

debtors control by virtue of the debtors' exemption and the provisions of the plan."

Debtors' Memorandum, at 11.

Accordingly, both parties agree that the chapter 7 trustee is now holding

property of the bankruptcy estate.  See Fix v. First State Bank of Roscoe, 559 F.3d 803,

809 (8th Cir. 2009) ("[W]hen Fix's bankruptcy proceeding was converted from Chapter

13 to Chapter 7, any property that was part of the bankruptcy estate at the time of the

original filing remains the property of the bankruptcy estate after the conversion.  See 11

U.S.C. § 348(f)(1)(a).").  Furthermore, the bulk of those proceeds had been claimed as

exempt under section 522(d)(1) at the outset of the chapter 13 case.  The sole issue posed

in this proceeding is whether orders entered while the case was in chapter 13, the debtors'

conduct, confirmed plan provisions, and/or statutory provisions arising from confirmation

supersede the debtors' homestead exemption.


III.


The debtors acknowledge that they had "waived their [homestead]

exemption for purposes of their chapter 13 plan[.]"  Debtors' Memorandum, at 9.

Although section 522(e) precludes prepetition waivers of exemptions in favor of

14

unsecured creditors, section 1322(b)(8) permits a chapter 13 debtor to fund a proposed

plan using property that would otherwise be exempt from the reach of creditors (e.g.,

social security benefits):

> In Chapter 13, however, property, even though claimed as
> exempt, can in effect remain property of the estate if the
> debtor proposes to fund his plan in part through the use of
> exempt property.  Section 1322(b)(8) specifically allows the
> debtor to propose payment of "all or any part of a claim
> against the debtor from . . . property of the debtor."  The
> debtor can, in effect, waive his exemptions and use exempt
> property in repaying creditors under a plan.

In re Adams, 12 B.R. 540, 542 (Bankr. Utah 1981) (footnote omitted); see, e.g., In re

Schnabel, 153 B.R. 809, 813 (Bankr. N.D. Ill. 1993).

The debtors emphasize, however, that their proposed plan expressly

contained a provision that rescinded their waiver of exemption upon conversion of the

case to chapter 7.  Debtors' Memorandum, at 9.  And section 1307(a) provides chapter 13

debtors with the right to convert to chapter 7 at any time, even after confirmation.  See In

re Fisher, 203 B.R. 958, 963 (N.D. Ill. 1997).  Furthermore, section 1327(a) renders the

terms of a confirmed plan binding.

Implicit in the debtors' argument is the premise that the terms of their

confirmed plan trump any conflicting terms of the pre-confirmation order that authorized

the sale of the debtors' realty.  See generally In re Diviney, 225 B.R. 762, 771 (B.A.P.

10th Cir. 1998) (terms of the binding plan supercede an earlier order that terminated the

automatic stay).  That is, if the order entered by agreement permitting the debtors to sell

their realty effectively waived the debtors's homestead exemption, by providing that the

sale proceeds paid to the chapter 13 trustee be used to repay the debtors' unsecured

creditors, the debtors contend that the terms of the confirmed plan, with its rescission of

any exemption waiver upon conversion, prevail.  I shall assume that this premise is correct.

Nevertheless, the terms of a confirmed bankruptcy plan are to be interpreted using the general principles of contract interpretation.  See, e.g., In re Shenango Group Inc., 501 F.3d 338, 344 (3d Cir. 2007); In re Stratford of Texas, Inc., 635 F.2d 365, 368 (5th Cir. 1981); In re Stuart, 402 B.R. 111, 126 (Bankr. E.D. Pa. 2009).  Where the terms of a confirmed plan are clear, they are enforced as written.  See In re Dow Corning Corp., 456 F.3d 668, 676 (6th Cir. 2006) ("In interpreting a confirmed plan, courts use contract principles, since the plan is effectively a new contract between the debtor and its creditors. . . .  State law governs those interpretations, and under long-settled contract law principles, if a plan term is unambiguous, it is to be enforced as written, regardless of whether it is in line with parties' prior obligations."); cf. Murphy v. Duquesne Univ. of the Holy Ghost, 565 Pa. 571, 590-91 (2001) ("The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties.").  Ambiguities in a language of a contract (i.e., confirmed plan) are construed against the drafter, here the debtor:

> If a debtor submits a generalized statement that it will pay secured creditors in full—100%, creditors are entitled to interpret that statement as guaranteeing the payment of each and every part of the creditor's claim.  If the debtor wishes to be more specific and secure a confirmed plan that modifies the plain language of a 100% payment guarantee, it is the debtor's duty to put the creditor on notice by specifically detailing any exceptions.  Failing this, the debtor as draftsman of the plan has to pay the price if there is any ambiguity about the meaning of the terms of the plan.  This comports with the long-standing rule that ambiguous terms of a document are to be interpreted against the party that drafted them.

In re Fawcett, 758 F.2d 588, 591 (11th Cir. 1985); see, e.g., In re Leis, 198 B.R. 257, 261 (Bankr. N.D. Ohio 1996).

Furthermore, it is generally accepted that rights of creditors can vest under the terms of a confirmed chapter 13 plan, which rights are not divested upon dismissal or conversion to chapter 7. For example, funds distributed by a chapter 13 trustee to creditors under the terms of a confirmed plan are not recoverable by the debtor if the case is later dismissed or converted, even if those funds were derived from postpetition earnings. See, e.g., In re Verdunn, 210 B.R. 621, 625-26 (Bankr. M.D. Fla. 1997); In re Boggs, 137 B.R. 408, 411 (Bankr. W.D. Wash. 1992); 3 Collier on Bankruptcy, ¶ 349.03[1] (15th ed. rev. 2008); see also, In re Mehan, 2000 WL 1010577, at *5 (Bankr. E.D. Pa. 2000).

Here, the express terms of the debtors' confirmed plan authorized the trustee to distribute funds in his possession at the time of confirmation on the earlier of thirty days after confirmation or the resolution of all filed objections to proofs of claim. At the time of confirmation, however, there were no such objections pending.[6] Thus, the confirmed plan directed the trustee to make distribution to creditors immediately upon confirmation using the funds from the proceeds of the pre-confirmation realty sale.[7]

---

[6]The only claims objections filed prior to confirmation, which objections were to the claims asserted by Wells Fargo Bank, N.A., and Asset Acceptance, LLC, were resolved on or before July 22, 2008. See docket entries # 77, 83, 92.

[7]As mentioned above, if this plan provision is deemed ambiguous, such ambiguity would be construed against the debtors as drafters.

Such a provision is made enforceable by 11 U.S.C. § 1326(a)(2).[8]  This

statutory provision instructs the chapter 13 trustee to retain plan payments made by the

debtor prior to confirmation until the debtor's proposed chapter 13 plan is either

confirmed or denied.  If denied, "the trustee shall return any such payments not previously

paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after

deducting any unpaid claim allowed under section 503(b)."  If confirmed, "the trustee

shall distribute any such payment in accordance with the plan as soon as is practicable."

Courts have construed section 1326(a)(2) as creating a right in creditors to

receive the funds paid to a chapter 13 trustee prior to confirmation, which right vests

upon confirmation unless the confirmed plan itself or the order of confirmation provide

otherwise.  See In re Parker, 400 B.R. 55, 62 (Bankr. E.D. Pa. 2009);  In re Parrish, 275

B.R. 424 (Bankr. D.D.C. 2002); see also In re Tran, 309 B.R. 330, 336 (B.A.P. 9th Cir.

2004) (noting a distinction made by section 1326(a)(2) between funds paid to the trustee

before confirmation and those paid after confirmation), aff'd, 177 Fed. Appx. 754 (9th

Cir. 2006); In re Waugh, 82 B.R. 394, 400 (Bankr. W.D. Pa. 1988).  As neither the terms

of the confirmed plan nor the confirmation order altered the creditors' statutory right to

payment upon confirmation provided by section 1326(a)(2), a subsequent conversion does

---

[8]This paragraph provides:

(2) A payment made under paragraph (1)(A) shall be retained by
the trustee until confirmation or denial of confirmation.  If a plan is
confirmed, the trustee shall distribute any such payment in
accordance with the plan as soon as is practicable.  If a plan is not
confirmed, the trustee shall return any such payments not
previously paid and not yet due and owing to creditors pursuant to
paragraph (3) to the debtor, after deducting any unpaid claim
allowed under section 503(b).

18

not permit the debtors to rescind their earlier waiver of their exemption rights.  See In re
Parrish, 275 B.R. at 431 ("Because § 1326(a)(2) implicitly gave the creditors the right to
obtain an order preconversion to compel distribution under § 1326(a)(2), they 'have a
vested right to receive those payments pursuant to the plan.'") (quoting In re Redick, 81
B.R. 881, 887 (Bankr. E.D. Mich. 1987)).

The debtors assert, nonetheless, that the creditors' right to payment under
the terms of their confirmed plan, the confirmation order, and section 1326(a)(2) were
terminated when the chapter 13 trustee transferred the funds in his possession, less his
commission, upon conversion to chapter 7.  They maintain that the chapter 7 trustee "has
no standing to claim any right under section 1326 to distribute the debtors' money under
the [confirmed] plan."  Debtors' Memorandum, at 12.

This argument, however, overlooks section 348(e), providing that
conversion of a chapter 13 case "terminates the services of any trustee . . . that is serving
in the case before conversion."  Consistent with this provision, Fed. R. Bankr. P. 1019(4)
directs the chapter 13 trustee to "forthwith . . . turn over to the chapter 7 trustee all
records and property of the estate in the possession or control of the . . . trustee."  See
generally Cable v. Ivy Tech State College, 200 F.3d 467, 474 (7th Cir.1999) (Pursuant to
section 348(e), "[a]t the moment the bankruptcy court granted Cable's motion to convert
[from chapter 7 to chapter 13], the Chapter 7 trustee lost jurisdiction over the case.").

Although some decisions permit a chapter 13 trustee to distribute sale
proceeds in his possession postconversion, when conversion to chapter 7 occurred after
confirmation of a plan, see In re Simmons, 286 B.R. 426, 431 (Bankr. D. Kan. 2002; In re
Pegues, 266 B.R. 328, 336-37 (Bankr. D. Md. 2001), that issue has not been squarely

19

addressed in this district.  See In re Mehan, 2000 WL 1010577, at *5 ("Accordingly, I

find that I do not have to reach the broader question posed by the Debtor to resolve the

instant dispute, i.e., whether undistributed plan payments made by a debtor to the Chapter

13 trustee prior to conversion pursuant to a confirmed plan should be distributed by the

Chapter 13 trustee to creditors after conversion pursuant to the terms of the confirmed

plan.").

      Given the uncertainty in this district regarding a chapter 13 trustee's

continued authority to make plan distributions pursuant to a confirmed plan post-

conversion , I can understand the trustee's decision to follow the terms of the pre-

confirmation consensual sale order: upon conversion, "any funds remaining in the

possession of the standing trustee shall be transferred to the appointed Chapter 7 trustee."

Motion for Summary Judgment, ex. C, at 2.

      To the extent that the chapter 13 trustee literally interpreted section 348(e)

and Rule 1019(4) , and in so doing complied with the June 2008 sale order by transferring

funds to the chapter 7 trustee upon conversion, the debtors suggest no persuasive basis

that his conduct undermined any rights that creditors had in those funds.  See In re

Parrish, 275 B.R. at 431:

> [E]ven under the erroneous view that § 348(e) prevents the
> chapter 13 trustee from acting as a trustee even when she
> winds up her administration, she is still "at the very least, a
> custodian of funds having the duty to deliver them to the party
> with the best claim to them."  In re Redick, 81 B.R. 881, 886
> (Bankr. E.D. Mich. 1987).  Because § 1326(a)(2) implicitly
> gave the creditors the right to obtain an order preconversion to
> compel distribution under § 1326(a)(2), they "have a vested
> right to receive those payments pursuant to the plan."  Redick,
> 81 B.R. at 887.  The result is that even after § 348(e)
> terminates her services, the chapter 13 trustee "is holding the
> undistributed funds as an agent for the creditors."  Id.  "The

mere happenstance of the delay inherent in . . . the preparing
and mailing of checks should not defeat vested statutory
rights." Id.

A declaration that, in this proceeding, the chapter 7 trustee holds the funds

she obtained from the chapter 13 trustee subject to vested creditor interests is consistent

with the general principle that a bankruptcy trustee takes possession of property of the

debtor subject to the rights of creditors in that property, if any. See generally In re Guild

and Gallery Plus, Inc., 72 F.3d 1171 (3d Cir. 1996) (property in possession of the trustee

but owned by a non-debtor is not property of the bankruptcy estate); In re Gibson, 218

B.R. 900, 903 (Bankr. E.D. Ark. 1997) ("Insurance proceeds that are estate property are

subject to the rights of creditors who are listed as loss payees under the policy.").

Finally, the debtors complain, in the alternative, that the chapter 13 trustee

acted improperly in taking his commission from the sale proceeds without requesting an

allowance of an administrative expense under sections 330, 503 and 507. Debtors'

Memorandum, at 13. In other words, if the chapter 13 trustee properly transferred funds

to the chapter 7 trustee upon conversion, the debtors contend that he should have

transferred all of the sale proceeds paid to him without deducting his commission.

I find this complaint unpersuasive for two reasons.

First, the debtors fail to distinguish between the compensation methods for

a standing chapter 13 trustee and a non-standing chapter 13 trustee. Only the latter need

seek compensation by application under section 330(a) and is limited by the statutory

ceiling found in section 326(b). Compensation for the former is addressed by section

1326(b)(2), which permits a standing chapter 13 trustee to be compensated "before or at

the time of each payment to creditors under the plan . . . the percentage fee fixed . . .

21

under section 586(e)(1)(B) of title 28[.]"  See 3 Collier on Bankruptcy, ¶ 326.02[3]b]

(15th ed. rev. 2008).  Thus, a standing chapter 13 trustee need not file an application for

compensation in order to obtain his statutory commission.

Second, the chapter 13 trustee's receipt of his statutory commission does

not affect the debtors' rights in this bankruptcy case.  11 U.S.C. § 326(c) states:

> If more than one person serves as trustee in the case, the
> aggregate compensation of such persons for such service may
> not exceed the maximum compensation prescribed for a
> single trustee by subsection (a) or (b) of this section, as the
> case may be.

Thus, the compensation payable to the chapter 7 trustee in this case will be reduced by the

amount of the commission taken by the chapter 13 trustee.[9]  See, e.g., In re Silvus, 329

B.R. 193, 206-07 (Bankr. E.D. Va. 2005); In re Rodriguez, 240 B.R. 912, 915-16 (Bankr.

D. Colo. 1999); In re Arius, Inc., 237 B.R. 843, 846-47 (Bankr. M.D. Fla. 1999).

Indeed, the chapter 7 trustee appears to recognize her predecessor's right to payment and

has released the chapter 13 trustee from all claims.[10]

Therefore, the effect of the $3,100 commission taken by the chapter 13

trustee serves only to reduce permissible compensation to the chapter 7 trustee.  As she

does not complain, and as there is no basis to conclude that the debtors' distribution under

chapter 7 will be diminished, the chapter 13 trustee's action provide no ground to deny

---

[9]Section 326(a) establishes a statutory ceiling for trustee compensation in chapter
7 and 11 cases. See In re Lan Associates XI, L.P., 192 F.3d 109 (3d Cir. 1999).  The
compensation ceiling in a chapter 7 case with $31,000 available for distribution is $3,850.  Of
that sum, $3,100 has already been paid to the chapter 13 trustee.

[10]The debtors have not filed any cross-claim against the chapter 13 trustee.

the chapter 7 trustee the declaratory relief she now seeks or to demand turnover of the

commission amount to the chapter 7 trustee.

IV.

In sum, there are no material facts in dispute, and the chapter 7 trustee is

entitled to a declaration that the funds in her possession may be distributed to pay the

allowed claims of unsecured creditors without deduction of the debtors' purported

homestead exemption.  This will result in unsecured claims being paid in full.  Despite

the debtors' protestations to the contrary, this outcome is equitable.

The debtors filed a chapter 13 petition when they clearly were ineligible to

do so, in an attempt to receive some of the proceeds from the sale of their realty.  They

feared that a chapter 7 filing would result in foreclosure and the loss of all equity in the

property.  Thereafter, the debtors were able to continue in chapter 13 and sell their realty

by promising to pay allowed unsecured claims from the proceeds of sale.  Upon that sale,

they were authorized to use some of the proceeds to repay their car loans: a sum

exceeding $11,000.  Furthermore, even after payment of allowed claims in full, they

would have received a surplus dividend, but for their conversion to chapter 7 and the

instant litigation that ensued.[11]

---

[11]It is possible that the chapter 7 counsel fees generated by this litigation will
preclude the debtors' receipt of a surplus under section 726.  Clearly, they would have received a
surplus dividend from the chapter 13 trustee had they not converted to chapter 7.

23

Accordingly, an order shall be entered granting the plaintiff/trustee summary judgment.

_____
BRUCE FOX
United States Bankruptcy Judge

Dated:  August 20, 2009